# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1480

_____

| | |
|---|---|
| William A. Weiler, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * Appeal from the United States |
| | * District Court for the |
| v. | * Northern District of Iowa. |
| | * |
| Kenneth S. Apfel, Commissioner | * |
| of Social Security, | * |
| | * |
| Defendant - Appellee. | * |

_____

Submitted: February 11, 1999
Filed: June 21, 1999

_____

Before McMILLIAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

William Weiler applied to the Social Security Administration for disability benefits. After the Administration denied the application originally and on reconsideration, the case came before an Administrative Law Judge who denied the benefits, finding that Weiler was not disabled. The Appeals Council of the Administration adopted the ALJ's findings and conclusions. Weiler sought review

under 42 U.S.C. § 405(g) (1994) in the district court,[1] which affirmed the decision of the Council. Weiler appeals, contending that the ALJ's finding was not supported by the record and that the ALJ failed to fully and fairly develop the record. We affirm.

Weiler is thirty-seven years old, has a high school education and work experience as a furniture mover, janitor, and meat trimmer. He stopped working in 1990, claiming that carpal tunnel syndrome made working impossible. He spends his days fishing, reading, and watching television.

He filed his application for benefits on December 2, 1992, alleging his inability to work since April 1, 1990. The ALJ heard his case on November 9, 1993. The ALJ decided additional medical testing was needed as to Weiler's psychological condition and his ability to handle stress. Weiler saw Dr. Grey Woodman, psychiatrist, Dr. Thomas Anderegg, psychologist, and Dr. Ann Shanklin, psychologist. He had previously seen Dr. S. Krish and Dr. Davis Field for evaluation of his hands.

The ALJ reviewed the additional evidence and denied the benefits. The government conceded there were procedural errors in the hearing, and the district court remanded. The ALJ denied the benefits on rehearing, and the district court affirmed. During the rehearing, the ALJ propounded a hypothetical to a vocational expert in which he limited Weiler to simple, routine, non-fast paced work, with a maximum lift of twenty pounds and a repeated maximum lift of ten pounds, including only occasional contact with the public, co-workers, and supervisors, and no repetitive hand movements. The vocational expert described four jobs that fit the limitations–deliverer, locker room attendant, arcade attendant, and surveillance monitor.

---

[1]The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

In analyzing the claim, the ALJ proceeded through the five-step process established by the Social Security Regulations.[2] See 20 C.F.R. § 404.1520 (a)-(f) (1998); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982). The ALJ found at the fifth step that Weiler had a residual functional capacity which allowed him to perform other work in the national economy in view of his age, education, and work experience. This finding, if not erroneous, precludes Weiler from being "disabled" within the meaning of the Social Security Act. See 20 C.F.R. § 404.1520(f); Baker v. Apfel, 159 F.3d 1140, 1144 (8th Cir. 1998).

We must determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. See Pierce v. Apfel, 173 F.3d 704, 706 (8th Cir. 1999). "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the [ALJ's] conclusion," and we consider evidence that supports the conclusion, as well as evidence that detracts from it. Id. We cannot reverse the ALJ's decision merely because the record contains substantial evidence supporting a contrary outcome. See id.

Weiler contends that the residual functional capacity finding is not supported by substantial evidence. He begins by arguing that at step five it is the Secretary's burden to establish by medical evidence that the claimant has the requisite residual functional capacity to perform other work. See Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995). He then argues that the ALJ's finding of Weiler's residual functional capacity was based only upon the discrediting of Weiler and Dr. Woodman and that the mere discrediting of the witnesses is not proof by medical evidence.

---

[2]The ALJ found that Weiler was not engaged in a substantial gainful activity, that Weiler was impaired, but the impairment did not equal one listed in Appendix 1, Subpart P, Regulations No. 4, and that Weiler was unable to perform past relevant work.

We do not quarrel with Weiler's assertion that the Secretary carries the burden of establishing the residual functional capacity by medical evidence. However, the record contains substantial medical evidence supporting the residual functional capacity. Cf. Frankl, 47 F.3d at 937-38 (record contained no medical evidence of residual functional capacity at the time of the hearing).

The ALJ determined Weiler's residual functional capacity:

> The claimant has the residual functional capacity to perform the physical exertional and nonexertional requirements of work except for lifting more than 20 pounds occasionally or 10 pounds frequently. He cannot use hand controls, nor can he do any repetitive pushing, pulling, gripping, or gross manipulation. He is able to do only simple, routine, repetitive work. He can only have occasional contact with the public, co-workers, or supervisors. He cannot work at a fast pace, but can perform at a regular pace . . . .

As for Weiler's physical condition, Dr. Krish's notes show normal results on many of the tests he conducted while examining Weiler's hands. Dr. Field's notes describe Weiler's carpal tunnel findings as "slight and subtle." Dr. Krish believed lifting and carrying was possible, and Dr. Field said the same of "light work." Both doctors recommended that Weiler avoid repetitious movements with his hands. The ALJ also followed the proper analysis in discounting Weiler's complaints of pain. See Anderson v. Shalala, 51 F.3d 777, 780 (8th Cir. 1995) (lack of credit given to claimant's complaints of pain considered in substantial evidence analysis).

As for Weiler's psychological condition, Dr. Woodman recommended that Weiler be placed on disability benefits, but this is not determinative. See Pierce, 173 F.3d at 707; Bentley v. Shalala, 52 F.3d 784, 785-86 (8th Cir. 1995). Dr. Woodman's report on Weiler's ability to do work-related activities showed that Weiler was "good" at following work rules and using judgment, and "fair" at relating to coworkers, dealing

-4-

with the public, interacting with supervisors, functioning independently, and maintaining concentration. Dr. Woodman assessed Weiler at "poor or none" only in his ability to deal with work stress. Although the ALJ did not specifically cite the relevant portion of the medical record, Dr. Anderegg gave Weiler scores of "very good" in all categories referred to above, including ability to deal with work stress. Dr. Shanklin noted that Weiler's ability to interact appropriately with supervisors, co-workers, and the public and his ability to respond appropriately to changes in the workplace was "markedly impaired," not completely lacking. Finally, the medical evidence showed that some of Weiler's psychological problems were linked to the problems with his hands; yet, he refused surgery and did not take prescription drugs. See Thomas v. Sullivan, 928 F.2d 255, 259-60 (8th Cir. 1991) (failure to follow prescribed treatment or undergo recommended testing considered in substantial evidence analysis).

The ALJ had before him rather consistent medical evidence regarding Weiler's carpal tunnel problems (except for the properly discounted complaints of pain) and conflicting medical evidence regarding Weiler's psychological problems. Viewing the entire record, substantial evidence supports the ALJ's residual functional capacity finding that Weiler be limited to simple, routine, non-fast paced work, with lifting restrictions, only occasional contact with the public, co-workers, and supervisors, and not involving repetitive hand movements.

Next, Weiler argues that even if there is substantial evidence in the record to support the residual functional capacity finding, the ALJ erroneously concluded that there are a significant number of jobs in the economy that Weiler could perform. He asserts that the vocational expert's testimony that Weiler was qualified to be a deliverer, locker room attendant, arcade attendant, or surveillance monitor was incompetent because a comparison of Weiler's residual functional capacity to the description of these jobs given in the Dictionary of Occupational Titles shows that Weiler could not perform the jobs. See Bjornholm v. Shalala, 39 F.3d 888, 891 (8th Cir. 1994).

We reject Weiler's argument. We need not exhaustively compare Weiler's residual functional capacity to every job recommended by the vocational expert. The vocational expert testified that there are 32,000 surveillance monitor positions nationwide. Weiler's physical and psychological condition, age, education, and work experience fully support his ability to be a surveillance monitor. The position does not require any lifting, repetitive hand movements, or interpersonal contact beyond Weiler's residual functional capacity.[3] The vocational expert's testimony in response to the ALJ's hypothetical is substantial evidence supporting the ALJ's conclusion that there are a significant number of jobs in the economy which Weiler can perform. See Roe v. Chater, 92 F.3d 672, 675 (8th Cir. 1996).

Finally, we reject Weiler's argument that the ALJ failed to fully and fairly develop the record. Weiler relies on the ALJ's statement that Dr. Woodman did not express an opinion as to whether Weiler satisfied the Social Security Act's disability listings. However, Weiler has failed to demonstrate that the opinions of the treating doctors could not "be adequately related to" the disability listings. Vaughn v. Heckler,

---

[3]The Dictionary of Occupational Titles describes the duties of a surveillance monitor:

> Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action: Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to improve reception, and notifies repair service of equipment malfunctions.

1 U.S. Dep't of Labor, Dictionary of Occupational Titles, 281 (4th ed. 1991).

741 F.2d 177, 179 (8th Cir. 1984).  Weiler's testimony was fully developed, and the record contained at least five sets of medical records and opinions from different doctors, each of whom evaluated Weiler's limitations.  Cf. id. at 179 (ALJ did not develop the claimant's testimony, did not obtain critical medical records, and needed to inquire as to claimant's limitations.).

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.