**Sharon K. BATES, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. C 97–3105–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

Sept. 17, 1999.

Mark S. Soldat, Algona, IA, for Sharon K. Bates, plaintiff.

Donna K. Webb, Assistant United States Attorney, Sioux City, IA, for Kenneth S. Apfel, Commissioner of Social Security, defendant.

**MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

BENNETT, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................1144

II. LEGAL ANALYSIS ..............................................1145
  A. Standards Of Review ......................................1145
    1. Review of a report and recommendation .............1145
    2. Review of an administrative denial of benefits.........1145
  B. Application Of The Review Standards .................1146
    1. The ALJ's decision ..................................1146
    2. Review on the record "as a whole" ................1147

III. CONCLUSION ..................................................1150

What is the significance of the claimant's evidence of chronic pain syndrome in this application for disability benefits under the Social Security Act? The claimant contends that the administrative law judge overlooked the evidence that she is totally disabled by chronic pain syndrome, as did a magistrate judge in a report and recommendation that judgment be entered in favor of the defendant Commissioner of Social Security in this action for judicial review. The court finds that it must now undertake a "scrutinizing analysis" of the decision of the Social Security Administration.

## I. INTRODUCTION

In this action, plaintiff Sharon K. Bates seeks judicial review of a decision of an administrative law judge (ALJ) denying her application for Social Security benefits under Title II (disability insurance (DI)) and Title XVI (supplemental security income (SSI)) of the Social Security Act. Bates alleges that she has been unable to work since December 4, 1991, when she suffered a back injury while performing duties as a home health aide. She alleges that she is disabled by back problems and, more particularly, by chronic pain syndrome. Bates was denied DI and SSI benefits at each stage of the Social Security administrative process, and, in a Report

and Recommendation filed on March 18, 1999, Magistrate Judge Zoss recommended that judgment be entered in favor of the defendant on Bates's action for judicial review. This matter is now before the court upon Bates's objections, filed March 29, 1999, to Judge Zoss's Report and Recommendation.

The procedural history of Bates's application for Social Security benefits is recounted in detail in Judge Zoss's Report and Recommendation. *See* Report and Recommendation, March 18, 1999, at 3. Because no party has made any objection to that portion of the Report and Recommendation, the court finds it unnecessary to reprise that history. Similarly, Bates does not object to the thorough recitation of the factual background presented in the Report and Recommendation. *See id.* at 3–13. Therefore, the court will not indulge in a further recitation of the facts. Rather, Bates's objections go to Judge Zoss's legal conclusions upon the record presented.

Bates takes issue with the Report and Recommendation on several grounds: (1) Judge Zoss's conclusion that there were "contradictions" in the various diagnoses of Bates's condition as resulting from chronic pain syndrome, depression, or hypochondriasis, which constituted substantial evidence to sustain the ALJ's denial of

benefits; (2) Judge Zoss's conclusion that Bates could return to work, based on medical opinions concerning impairment that failed to take into account Bates's chronic pain syndrome; and (3) Judge Zoss's failure to examine whether the ALJ ever "fully considered" a diagnosis of chronic pain syndrome and the impact of such a diagnosis upon Bates's ability to work. Therefore, she asserts that, under a "scrutinizing analysis," the ALJ's conclusions cannot be sustained.

## II. LEGAL ANALYSIS

The court's legal analysis begins with consideration of the standards of review applicable to a report and recommendation of a magistrate judge and an ALJ's denial of Social Security benefits. With those standards in mind, the court will then address Bates's assertions that both the magistrate judge and the ALJ improperly concluded that Bates was not entitled to either DI or SSI benefits based on her allegations that she suffers from a disabling a combination of impairments, including degenerative disc disease of the lumbar spine, pain, obesity, chronic pain syndrome, and underlying mental depression.

### A. Standards Of Review

#### 1. Review of a report and recommendation

The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such re-

view is required. *See, e.g., Hosna v. Groose,* 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied,* 519 U.S. 860, 117 S.Ct. 164, 136 L.Ed.2d 107 (1996); *Grinder v. Gammon,* 73 F.3d 793, 795 (8th Cir.1996) (citing *Belk v. Purkett,* 15 F.3d 803, 815 (8th Cir.1994)); *Hudson v. Gammon,* 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk* ). Because objections have been filed in this case, the court must conduct a *de novo* review. The court has done so by reviewing the record before Judge Zoss in light of Bates's objections to Judge Zoss's Report and Recommendation. In light of the determination that *de novo* review is required in this case, the court must also survey the standards applicable to judicial review of an ALJ's denial of Social Security benefits.

#### 2. Review of an administrative denial of benefits

The Eighth Circuit Court of Appeals recently explained the standard for judicial review of an ALJ's denial of Social Security benefits as follows:

We must uphold the ALJ's decision if it is supported by substantial evidence. *See Metz v. Shalala,* 49 F.3d 374, 376 (8th Cir.1995). Our task is not to reweigh the evidence, and we may not reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion or merely because we would have decided the case differently. *See Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir.1993); *Smith v. Shalala,* 987 F.2d 1371, 1374 (8th Cir.1993). In determining whether substantial evidence supports the ALJ's decision, we must consider evidence in the record that supports the ALJ's decision as well as evidence that detracts from it. *See Brockman v. Sullivan,* 987 F.2d 1344, 1346 (8th Cir.1993).

*Harwood v. Apfel,* 186 F.3d 1039, 1042 (8th Cir.1999); *Weiler v. Apfel,* 179 F.3d 1107, 1109 (8th Cir.1999) ("We cannot reverse the ALJ's decision merely because the record contains substantial evidence support-

ing a contrary outcome."). " 'Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the [ALJ's] conclusion.' " *Weiler,* 179 F.3d at 1109 (citing *Pierce v. Apfel,* 173 F.3d 704, 706 (8th Cir.1999)). However, the reviewing court "must determine whether the ALJ's findings are supported by substantial evidence on the record as a whole." *Id.* (again citing *Pierce,* 173 F.3d at 706).

The Eighth Circuit Court of Appeals has also explained how a court is to determine whether the ALJ's findings "are supported by substantial evidence on the record as a whole":

> In *Gavin v. Heckler,* 811 F.2d 1195, 1199 (8th Cir.1987), the Court discussed the difference between "substantial evidence" and "substantial evidence on the record as a whole." "Substantial evidence on the record as a whole" wrote then Chief Judge Lay, "requires a more scrutinizing analysis" than the "substantial evidence" test. The Court went on to say:
>
> > In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. National Labor Relations Bd.,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory. *See Steadman v. Securities and Exchange Commission,* 450 U.S. 91, 99, 101 S.Ct. 999, 1006, 67 L.Ed.2d 69 (1981). It follows that the only way a reviewing court can determine if the entire record was taken into consideration is for the district court to evaluate in detail the evidence it used in making its decision and how any contradictory evidence balances out.
>
> *Gavin v. Heckler,* 811 F.2d at 1199. In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the en-

tire record. *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir.1975).

*Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998). Thus, this court must undertake a "scrutinizing analysis" of the evidence in the record as a whole.

### B. Application Of The Review Standards

All of Bates's objections to Judge Zoss's Report and Recommendation, and indeed all of her grounds for judicial review of the ALJ's decision, focus on the uncontradicted record that she suffers from chronic pain syndrome and the impact such a diagnosis has on her ability to work. She contends that the ALJ overlooked this evidence. In essence, Bates contends that the ALJ (and now Judge Zoss) would deny her benefits based upon the very characteristics that prove she suffers from totally disabling chronic pain syndrome. Thus, her third objection to the Report and Recommendation, which challenges whether the ALJ ever "fully considered" a diagnosis of chronic pain syndrome and the impact of such a diagnosis upon Bates's ability to work, appears to the undersigned to encompass all of her other objections, and therefore to be dispositive of her action for judicial review.

#### 1. The ALJ's decision

The ALJ rendered the challenged decision on November 24, 1995, following a hearing on September 22, 1995, at which Bates was represented by counsel. *See* Department of Health and Human Services, Social Security Administration, Office of Hearings and Appeals, Decision (ALJ's Decision), Record 18–28. At the hearing, the ALJ heard testimony by Bates, Bates's husband, and one of Bates's friends, as well as the testimony of a vocational expert in response to two hypothetical questions posed by the ALJ. The ALJ determined that Bates was not entitled to benefits, because she was not disabled within the meaning of the Social Security Act.

In the "Rationale" for the ALJ's Decision, the ALJ stated that Bates "alleges as disabling a combination of impairments, including degenerative disc disease of the lumbar spine with complaints of pain, obesity, chronic pain syndrome and underlying mental depression." ALJ's Decision at 2 (Record at 19). The ALJ stated in his Decision that he had applied the five factor test of *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir.1984), *id.* at 3 (Record at 20), framing the issue to be determined as whether "the severity of the claimant's pain with resultant functional limitations constitutes a disability within the meaning of the Social Security Act," acknowledging that "[n]o one doubts the claimant experiences some pain and discomfort." *Id.* The ALJ reviewed the medical record, but focused particularly on comments made by various medical and psychiatric professionals concerning Bates's apparent symptom exaggeration or magnification. The ALJ believed these comments undermined Bates's credibility and supported a conclusion that Bates was not disabled within the meaning of the Social Security Act. The specific comments to which the ALJ pointed were that Bates's complaints of pain were in excess of what appeared to be supported by her physical impairments, that Bates appeared uninterested in returning to work, and that the psychiatrist who evaluated her diagnosed her as suffering from only "mild depression" with "no somatoform disorder responsible for the involuntary production of exaggerated symptoms in the claimant." *Id.* at 4–6 (Record 21–23).

In a brief application of the *Polaski* factors, the ALJ discounted Bates's subjective pain complaints, and instead found that "Listing 12.04 [Affective Disorders] is the category of a disorder which the medical evidence shows affecting the claimant," and "the specific question is to what extent claimant's 'Depression, NOS, mild' results in functional limitations." *Id.* at 6 (Record at 23). The ALJ concluded that the "limitation is only slight." *Id.*

Upon a review of Bates's "uneven" work history and the testimony regarding her daily activities, the ALJ reached the following conclusion:

> The claimant's allegations concerning the existence, persistence and intensity of symptoms at the hearing and by her applications are less than fully credible. The assessment of possible symptom exaggeration by Dr. Salib and by the physical therapist diminishes the believability of her allegations of reduced residual functional capacity.

*Id.* at 7 (Record at 24). The ALJ then noted that the vocational expert had responded to a hypothetical question he had posed by concluding that, although Bates could not return to her past relevant work, she could perform various jobs that exist in significant numbers in the national economy. *Id.* at 7–8 (Record at 25–26).

The specific "Findings" of the ALJ of interest here are the following:

3. The medical evidence establishes that the claimant has a combination of impairments, including degenerative disc disease of the lumbar spine with complaints of pain, obesity, chronic pain syndrome and underlying mental depression, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's allegations are less than fully credible insofar as the assessment of symptom exaggeration by one of the doctors, among other inconsistencies, her activities of daily living, lack of medication and other factors affects her allegations of residual functional capacity....

\* \* \* \* \* \*

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision [November 24, 1995].

*Id.* at 10–11 (Record 27–28).

### 2. *Review on the record "as a whole"*

■ If the court's review was limited to the question of whether there is evidence

to support the ALJ's conclusions, the court would be compelled to affirm the ALJ's findings and conclusions, as they are outlined above. However, such is not the court's task. Rather, as mentioned above, in deciding whether the ALJ's conclusions are supported by "substantial evidence," the court "must consider evidence in the record that supports the ALJ's decision as well as evidence that detracts from it." *Harwood,* 186 F.3d at 1042 (citing *Brockman,* 987 F.2d at 1346); *accord Wilcutts,* 143 F.3d at 1136–37 (citing *Gavin,* 811 F.2d at 1199, and *Brinker,* 522 F.2d at 16). The court finds that substantial evidence detracts from the ALJ's conclusions, and indeed, considering how the " 'contradictory evidence balances out,' " *Wilcutts,* 143 F.3d at 1137 (quoting *Gavin,* 811 F.2d at 1199), the court concludes that the ALJ did not fully consider the impact of Bates's diagnosis of chronic pain syndrome. Consequently, under the appropriate "scrutinizing analysis," *id.,* the ALJ's decision cannot be sustained.

The centerpiece of Bates's complaints is her assertion that she suffers from totally disabling chronic pain syndrome. Chronic pain syndrome "has both a physical and psychological component." *Lester v. Chater,* 81 F.3d 821, 829 (9th Cir.1995). In the syndrome,

> [p]ain merges into and becomes a part of the mental and psychological responses that produce functional impairments. The components are not neatly separable. Given that the consequences of [a chronic pain syndrome sufferer's] physical and mental impairments are so inextricably linked, the Commissioner must consider whether these impairments *taken together* result in limitations equal in severity to those specified by the listings. If the combined effect of [the sufferer's] mental and physical impairments satisfies the [SSA] criteria, then the Commissioner would be required to find that [the sufferer's] condition equals in severity the "Affective Disorders" listing and, therefore, that [the sufferer] is disabled. 20 C.F.R. § 1526(a); *Sprague*

*[v. Bowen],* 812 F.2d [1226,] 1231 [ (9th Cir.1987) ].

*Lester v. Chater,* 81 F.3d 821, 829–30 (9th Cir.1995). Bates argues that the supposed symptom "magnification" or "exaggeration" is a characteristic of chronic pain syndrome, not a basis for discounting the disabling effect of the syndrome. The court finds that the pertinent questions are to what extent evidence of chronic pain syndrome can be found in the record and to what extent the ALJ considered that evidence, to determine whether the evidence of chronic pain syndrome detracts so significantly from the ALJ's conclusions that the administrative decision cannot be sustained. *See Harwood,* 186 F.3d at 1042; *Wilcutts,* 143 F.3d at 1136–37.

Bates, the first witness to testify before the ALJ, testified that Dr. Salib had diagnosed her with chronic pain syndrome. Transcript at 9 (Record at 57). Bates testified that, unfortunately, she had never had the funds to go to a chronic pain clinic. *Id.* at 41 (Record at 89). However, what the court finds specifically detracts from the ALJ's conclusions is that diagnoses of chronic pain syndrome are found in the *later* medical records, that is, those nearest the date of the hearing before the ALJ, the 1994 reports of Drs. Salib and Hayreh. Record at 301 & 320, respectively. Thus, while there may be some ground for the ALJ's determination that chronic pain syndrome was not significant or did not exist as a disabling impairment at the beginning of the period for which Bates sought benefits, early 1991, for approximately a year before the administrative hearing, Bates was consistently diagnosed with chronic pain syndrome, and the physicians making that diagnosis relied to some extent on precisely the factors the ALJ found undermined the credibility of Bates's pain allegations. This evidence seriously detracts from the ALJ's conclusions and calls into question whether he fully considered Bates's assertions of disability based on chronic pain syndrome.

For example, the ALJ noted that Dr. Salib had found in 1994 that his examination of Bates showed "[v]irtually all five of Dr. Wadell's signs which suggest either hypochondriasis or symptom magnification were positive in this individual." In a finding that Bates argues demonstrates that the ALJ misunderstood or mischaracterized her medical records, the ALJ characterized Dr. Salib's "referral to *hypochondria* or exaggeration of symptoms" as "seriously undermin[ing] the credibility of the claimant overall." *Id.* at 5 (Record at 22) (emphasis added). Bates asserts, however, that "hypochondriasis" is not the same as "hypochondria."[1] The court finds that what is of greater interest in the ALJ's consideration of the evidence from Dr. Salib is the ALJ's omission of Dr. Salib's conclusions, which demonstrate that chronic pain syndrome is a very significant factor in Bates's alleged disability.

For example, although the ALJ relied in his decision on Dr. Salib's "assessment of possible symptom exaggeration" as undermining the credibility of Bates's subjective pain complaints, in Dr. Salib's "Discussion" of his "Diagnosis," Dr. Salib explained the import of Bates's symptom exaggeration:

Based on my evaluation of this woman today, I feel that [Bates] shows definite evidence of chronic pain syndrome and has had a soft-tissue injury to the lumbar spine with preexisting degenerative disc disease to the spine.... I believe that a chronic pain clinic should be considered.

Record at 301 (Report of Dr. Richard M. Salib, Institute for Low Back Pain). Admittedly, Dr. Salib also estimated Bates's permanent partial disability at only 10.5%, and identified restrictions under which Bates could work. *Id.*[2] However, the restrictions he imposed should be compared with those the vocational expert found would preclude Bates's employment under the second hypothetical question posed by the ALJ. *See* Transcript at 58 (Record at 106).[3] The ALJ did not mention this second hypothetical question in his Decision or the vocational expert's conclusion that a person fitting this second hypothetical question would be unable to work. *Compare* ALJ's Decision at 8–9 (Record at 25–26) (discussing the vocational expert's response to only one hypothetical question); *with* Transcript at 58 (testimony of voca-

---

1. STEDMAN'S MEDICAL DICTIONARY (25th ed.), however, defines "hypochondria" as "hypochondriasis," and defines the latter as "Hypochondria; a morbid concern about one's own health and exaggerated attention to any unusual bodily or mental sensations; a delusion *that one is suffering from some disease.*"

2. Dr. Salib's report that Bates "is capable of working at restrictions which would be described as very light" is somewhat ambiguous. It is unclear whether Dr. Salib meant that Bates could only perform "very light work," because of restrictions, or that the restrictions were "very light," suggesting little diminution of ability to work. The nature of the restrictions suggests the former interpretation to be the correct one:

[Work restrictions] includ[e] sitting in a standard chair, but changing positions every 15 minutes, standing and walking but changing positions or resting every 15 minutes, carrying 10 pounds occasionally during the day, *no bending or lifting,* pushing and pulling up to 10 pounds not on wheels and 25 pounds if it is on wheels.

Record at 301 (Report of Dr. Richard M. Salib, Institute for Low Back Pain).

3. The vocational expert was presented with a second hypothetical question by the ALJ positing the following comparable restrictions:

[T]his would be an individual who would have the physical and mental capacity to perform work-related activities except for lifting of no more than 10 pounds with no standing of more than 15 to 20 minutes at a time, no sitting of no more than 15 to 20 minutes at a time, and no walking of no more than 4 blocks at a time, with no repetitive bending, stooping, twisting, or squatting, no repetitive climbing, no repetitive pushing or pulling, no continuous use of the hands for tactile sensation, no repetitive work with the arms overhead....

Transcript at 58 (Record at 106). The vocational expert testified that "with the lower standing, sitting limitations to 15 to 20 minutes, also the no continuous use of the hands would preclude all employments including unskilled work activities." *Id.* at 59 (Record at 107).

tional expert on second hypothetical question) (Record at 106).

Similarly, in a report dated September 29, 1994, Dr. Hayreh stated the following:

I think Mrs. Bates has the following conditions:

1. Exogenous obesity.
2. Chronic low back pain syndrome, probably mechanical back pain and musculoskeletal in nature. Clinically, there is no evidence of any radiculopathy. She may have some radiculitis. In addition, there appears to be some functional overlay in her complaint and symptoms.
3. Suspect underlying depression.

I would recommend further evaluation with MMPI testing.

Record at 320–21 (Report of Dr. Hayreh, Mason City Clinic, P.C., Neurology Department). Dr. Hayreh's report, and hence his conclusions that Bates suffers from chronic pain syndrome, also are not mentioned at all in the ALJ's Decision. Thus, it does not appear that the ALJ fully considered the more recent diagnoses of chronic pain syndrome, relying instead on older reports indicating unexplained symptom exaggeration. The court believes that this " 'contradictory evidence balances out' " against finding that the ALJ's Decision, which largely ignores the impact of chronic pain syndrome, is supported by substantial evidence. *Wilcutts,* 143 F.3d at 1137 (quoting *Gavin,* 811 F.2d at 1199).

In so concluding, the court recognizes that, in his Decision, the ALJ did mention Bates's allegation of chronic pain syndrome, ALJ's Decision at 2 (Record at 19); did include in his "Findings" that Bates had impairments including chronic pain syndrome, *Id.* at 10 (Record at 27); and did include in his first hypothetical question—and at least by inference in his second hypothetical question—that the hypothetical claimant did have "complaints" of chronic pain syndrome, Transcript at 57–58 (Record at 105–06). However, "contradictory evidence" still " 'balances out' " against finding that the ALJ's Decision is supported by substantial evidence. *Wil-*

*cutts,* 143 F.3d at 1137. This is so, for several reasons. First, the absence of any discussion of the impact of chronic pain syndrome upon Bates's disability suggests the issue was never considered. Second, the ALJ's decision is undermined by the selective use of portions of Dr. Salib's report to support the ALJ's reliance on symptom exaggeration to discount the credibility of Bates's subjective pain complaints, while ignoring Dr. Salib's specific evaluation of Bates as showing "definite evidence of chronic pain syndrome," a condition that is characterized in part by the very "exaggeration of symptoms" upon which the ALJ seized. Third, the fact that the more recent of the medical reports—one of which the ALJ discussed in other respects and one of which the ALJ ignored in his Decision—both make uncontradicted diagnoses of chronic pain syndrome, seriously detracting from any conclusion that fails to take into account the impact of the claimant's current condition.

The court also recognizes that "an ALJ is not required to discuss every piece of evidence submitted," but an ALJ is "required to develop the record fully and fairly." *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir.1998). When an ALJ relies on older medical records, and either does not discuss later records or discusses only those parts of later records that support a specific view of the claimant's condition, the ALJ has not "fully and fairly" considered the evidence and developed the record, and the failure to consider significant contradictory evidence "balances out" against sustaining the ALJ's conclusions. *See Wilcutts,* 143 F.3d at 1136–37.

### III. CONCLUSION

The ALJ's Decision is not supported by "substantial evidence on the record as a whole" under the appropriate "scrutinizing analysis." *Id.* The court does not find that the evidence of chronic pain syndrome necessarily requires the court to overturn the decision of the Social Security Administration and award benefits. That evidence is,

however, sufficient that the court feels compelled to remand this matter to the Social Security Administration for further consideration of the evidence of chronic pain syndrome and the impact of that syndrome upon Bates's claim of disability.

Consequently, Magistrate Judge Zoss's Report and Recommendation, filed on March 18, 1999, is **rejected,** and this matter is **remanded to the Social Security Administration** for reconsideration of the evidence of chronic pain syndrome and the impact of that syndrome upon Bates's claim for DI and SSI benefits.

**IT IS SO ORDERED.**