**Terrance GREENE, Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Appellee.**

No. 89–2785.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1990.

Decided Jan. 9, 1991.

Mary K. Hoefer, Iowa City, Iowa, for appellant.

Robert C. Dopf, Des Moines, Iowa, for appellee.

Before JOHN R. GIBSON, Circuit Judge, ROSS, Senior Circuit Judge, and LARSON,[*] Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

Terrance Greene appeals from the district court's order affirming the Secretary of Health and Human Services' decision denying him disability benefits under Title II of the Social Security Act. Greene argues that the administrative law judge erred in: (1) basing his decision on a vocational expert's response to a hypothetical question that did not include all relevant impairments; (2) failing to explain why he disbelieved Greene's testimony that he could not stand for longer than five minutes at a time; and (3) finding that Greene did not prove his impairment met certain listings contained in 20 C.F.R. Part 404, Subpart P, App. 1 (1990). We reverse and remand.

Mr. Greene suffers from a number of impairments, all resulting from a head injury suffered in a high school football game in 1973 which left him with spastic hemiparesis (partial paralyzation) on his left side. He has no control over or use of his left hand; minimal use of his left arm; numbness of his left leg; and a speech impediment. He also has a seizure disorder, which is controlled to some extent by medication, and headaches, which are treated with medication. His injury has resulted in memory loss, mild difficulty in concentrating and mild inability to understand and carry out detailed instructions.

Greene worked briefly as an auto parts salesman and for a year as a maintenance man, ending in 1980. He testified that he believed he lost his job as a salesman due to his difficulty in making customers understand his speech.

The administrative law judge found that Mr. Greene had not been engaged in substantial gainful activity, that he had a severe impairment, but that his impairment did not meet or equal the requirements of the relevant listings, that he was not capable of performing past relevant work, and that he would not be capable of transferring previously acquired skills to work within his ability to perform. *Terrance Greene*, No. 483–72–2775, slip op. at 6 (April 19, 1988). Nevertheless, the ALJ concluded that Mr. Greene would be capable of working as a photographic process worker, a vehicle escort driver, a rental clerk or a sewing machine operator. *Id.*

■ Mr. Greene first argues that the ALJ erred in rejecting his testimony that he could not stand for longer than five minutes at a time without articulating any specific reason for disbelieving the testimony, as required by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir.1984) (subsequent history omitted). *See Simons v. Sullivan*, 915

[*] The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

F.2d 1223, 1225 (8th Cir.1990). The Secretary concedes the ALJ's written opinion did not satisfy the *Polaski* standards, but argues the failure was harmless error. We cannot agree that the error was harmless, since sustained disturbance of the claimant's "station" (ability to stand) is key to a finding of disability under 20 C.F.R. Part 404, subpart P, App. 1, listings 11.04 and 11.18. Moreover, the vocational expert whose opinion was the foundation of the ALJ's decision conceded that crediting Mr. Greene's testimony about his ability to stand, the rental clerk and photo processing jobs would not be within Greene's abilities. Tr. at 41.

■ Mr. Greene also argues that the ALJ erred in basing his decision about what work Mr. Greene could perform on the answer to a hypothetical question that lacked necessary information. The law is clear that "hypothetical questions posed to vocational experts in such circumstances should precisely set out the claimant's particular physical and mental impairments." *Tennant v. Schweiker*, 682 F.2d 707, 711 (8th Cir.1982). If the question is inadequate, the response to it is not substantial evidence sufficient to uphold the ALJ's decision. *Douglas v. Bowen*, 836 F.2d 392, 396 (8th Cir.1987).

The ALJ asked the expert the following hypothetical question:

Q   All right. Assuming the claimant to be a younger individual with a 12th plus grade education and past work history as stated in Exhibit 61, assuming the claimant has a severe impairment as a result of which he could lift and carry no more than 40 pounds occasionally and 20 pounds frequently, that he could [sic] no prolonged standing or walking and that he has loss of use of his left non-dominant arm and hand, that he should be in no unprotected heights nor working or moving around dangerous machinery or *driving* or climbing ladders, only occasionally would the claimant be able to do bending, balancing or kneeling, and he has a moderate inability to understand, remember and carry out detailed instructions, he can only handle jobs classified

as low stress in nature, where this is related to the fact that he says that when being in a stressful situation his speech might be affected, I will ask you more about this later on but this, the stressful nature of the job would be a factor that has to be considered in light of the way he indicated his speech might be affected when subjected to stressful situations.

Tr. at 36–37 (emphasis added). In response, the vocational expert replied that such a person could do any of the four jobs listed above.

Though not raised by the parties, this court notes that one of the jobs the expert recommended for Greene (and the ALJ found Greene could do) was to drive escort vehicles; however, the hypothetical question expressly excluded driving from the range of activities possible for the claimant. Obviously, this part of the ALJ's decision cannot stand.

■ Mr. Greene first complains that the hypothetical question failed to take into account the full extent of the impairment of his left leg. The Secretary argues that the expert adequately considered the impairment of the leg because he was told to assume that the claimant could do no prolonged standing or walking. As noted above, the ALJ asked the expert if his answer would change if he were to assume the claimant could not stand longer than five minutes at a time or walk more than an hour at a time. In response, the ALJ stated that the claimant would not be able to do the rental clerk and photo processor jobs, but stated that the claimant could still do the escort driver and sewing machine jobs. Tr. at 41. However, even the question as the ALJ modified it failed to take into account the fact that Mr. Greene's left leg is numb. There was testimony that his leg was so numb he could walk off without his left shoe and not be aware he was barefoot. Tr. at 31. There was evidence that he tripped and fell easily and frequently, Tr. at 29, 32, J.A. at 140, and that he could not use a clutch because his foot kept slipping off the pedal, Tr. at 32. These are significant impairments not stated in the question posed to the expert, and the expert answered the hypothetical question by recommending a job as a professional driv-

er, which may well have required use of the left leg in working a clutch.

■ There was also an ambiguity in the question as posed that appears to have made the answer to the hypothetical question misleading. The ALJ asked the expert to assume that the claimant "has loss of use of his left non-dominant arm and hand." Tr. at 36. It became evident later in the expert's testimony that he interpreted this to mean "some loss" rather than "complete loss" of the hand:

Q Is there anything else that the claimant mentioned that we did not consider that might have a bearing on these jobs?
A. I believe that the limitations concerning the left upper extremity need to be considered.
Q. So when I said loss of use of the left upper extremity, you did not take that into account?
A. Yes, I, I I took it in in [sic] account. I guess we're looking at degrees of of [sic] the loss of use in thinking back on that limitation, it was taken into consideration and I did make note of it. These specific positions that I mentioned, there would be no reason why the job could not be performed....

Tr. at 42. The inference that the expert may have been misled on this score is strengthened by the fact that the document he relied on in concluding that the claimant could be a photographic processor, escort driver, rental clerk, or a sewing machine operator shows that these jobs require the ability to "reach, handle, finger and feel"—abilities clearly beyond Mr. Greene's use of his left hand. The hypothetical question was not specific enough to engender reliable information, and therefore the answer to it does not constitute substantial evidence. *Douglas*, 836 F.2d at 396.

■ Mr. Greene also argues that the hypothetical question omitted his seizure disorder and headaches. The ALJ apparently omitted these because there was evidence in the medical records that the seizure and headaches were well controlled by medication. Mr. Greene (who was not represented by counsel at the hearing) has presented to this court new evidence that the seizures still occur.

Moreover, the ALJ made a statement about the seizures that appears to contradict the medical record before him. He stated that Greene's "seizure control is good, with but one episode in 1978 and the next in 1987." Slip op. at 3. The medical record indicates Greene has had more than just these two seizures. For instance, in March, 1977 and May, 1978 he was reported to have had focal seizures regularly despite drug therapy, though these seizures did not involve loss of consciousness. J.A. at 180, 190. He had what was apparently a grand mal seizure in December, 1985, J.A. at 218. Moreover, his neurologist stated in July, 1986 "[w]ith the propensity to seizures there is a fair amount of risk working around heavy equipment...." J.A. at 230. Yet, on this record the ALJ concluded that Mr. Greene could become a professional driver. This evidence should have alerted the ALJ of the need for further inquiry to discharge his duty to develop the evidence "fully and fairly" on the seizure issue. *See Highfill v. Bowen*, 832 F.2d 112, 115 (8th Cir.1987). On remand, the ALJ's conclusions regarding the extent of the impairment from seizures should be clarified and reflected in the hypothetical question, if the evidence warrants.

■ Mr. Greene also argues that the speech disorder should have been included in the hypothetical question. However, the ALJ specifically asked the expert if there was anything in Mr. Greene's speech that might affect his conclusions, and he answered "no." Tr. 39–40. Thus, we do not find error on this issue.

The Secretary makes some argument that Mr. Greene's condition arose after December 31, 1981, the date his insured status expired. We find no evidence of this in the record, since his injury occurred in 1973, and his impairments have been substantially the same since then.

We reverse and remand for an additional hearing and further consideration in light of this opinion.