Daniel HOUSE, Appellant,

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Appellee.**

No. 93–3612.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1994.

Decided Sept. 8, 1994.

---

John Bowman, Davenport, IA, argued (Michael DePree, on the brief), for appellant.

William C. Purdy, Des Moines, IA, argued, for appellee.

Before WOLLMAN, Circuit Judge, and ROSS and JOHN R. GIBSON, Senior Circuit Judges.

ROSS, Senior Circuit Judge.

Daniel House appeals from the decision of the district court[1] affirming the Secretary's denial of disability benefits. On appeal House argues that the administrative law judge erred in discounting House's subjective complaints of pain. He also contends that the hypothetical question posed to the vocational expert defectively failed to include ref-

---

1. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

erence to House's complaints of headaches. Finally, House argues that the vocational expert's testimony failed to constitute substantial evidence to show that jobs exist in the economy that House can perform. For the reasons discussed below, we affirm.

House applied for benefits on March 14, 1988, alleging a disability from August 13, 1983, following an injury to his skull. His application for benefits was denied initially and upon reconsideration. On November 20, 1990, the Appeals Council vacated the decision and remanded the case to an administrative law judge (ALJ) with orders to evaluate House's complaints of continuous headaches and other non-exertional impairments in accordance with *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984) (subsequent history omitted). On April 24, 1992, following a hearing, the ALJ issued a new decision, again finding House not disabled. The Appeals Council denied House's request for further review and on September 14, 1993, the district court found substantial evidence in the record as a whole to support the Secretary's decision.

House was hospitalized on August 13, 1983, at the University of Iowa Hospital for evaluation and treatment of a depressed skull fracture after being struck in the head with a hammer. During his hospitalization, House exhibited speech deficits and numbness in his right hand. House's treating physician, Dr. Godersky, noted that by August 30, 1983, House's speech was improved and he was able to use his right hand with more strength and more sensation. House continued to complain of headaches at this time for which he was prescribed Tylenol # 3. During an examination on October 3, 1983, House complained of difficulty sleeping, difficulty finding words, speech that was not spontaneous and loss of sensation, especially in his right hand. His strength was normal, but his coordination for fine movements was impaired in his right hand. Dr. Godersky wrote that House could not return to his previous job at Champion Sparkplugs, where he worked as a production machine operator, forklift operator and a maintenance department worker. Dr. Godersky concluded, however, that House could do some work around

his farm that did not include working with hazardous machinery.

On December 1, 1983, House continued to complain of various neurological symptoms and limitations, including headaches. A motor examination showed only a mild decrease in fine motor movements in his right hand, and his grip was only mildly diminished. Sensation in his right hand and arm remained diminished, but reflexes were normal.

During the first half of 1984, House was seen twice at a neurosurgery clinic, where he continued to complain of headaches, although less than before. Continued improvement of leg numbness, coordination and speech were noted. His speech was aided by ongoing speech therapy. He was still restricted from going back to work which would involve the use of caustic chemicals because of his poor memory complaints and loss of sensation.

House began taking college courses in the spring of 1984, and had completed 200 hours at the time of the second hearing on September 30, 1991. He carried a twelve-hour course load per semester, and had retaken and passed four or five courses that he had previously failed. Medical examinations in October and December of 1984 revealed that House was doing well despite continuing complaints of headaches.

At the second hearing on September 30, 1991, House testified that he began having the headaches at the time of the injury and that they have been constant ever since. He claimed that in a stressful environment he gets confused, his speech slurs and he gets excited and "can't function properly." He claims that since the injury he has poor concentration and that once or twice a month he would have to lie down and rest in between classes in order to cope with his headaches.

The last treatment record, dated January 1985, showed a stress factor likely associated with headaches, documented improvement in the headaches with relaxation therapy, and residual limitations which were not totally disabling. Such limitations included mainly a dysfunction of the fine motor coordination in the right hand with some sensory deficits in the right hand and arm, which prevented

House from performing fine hand manipulation.

While the ALJ noted the existence of the headaches, the judge was not convinced that the intensity and persistence of the headaches were at disabling levels. The ALJ further noted that his condition had essentially stabilized with certain deficits and that neither the headaches nor the deficits prevented House from successfully going to college, which eventually culminated in his B.A. degree.

The ALJ also found that House's activities of daily living militated against a finding of disabling pain. The judge noted that House had expressed an intent to attend graduate school but at the time did not have the funds to do so. House stated that he could have worked had he not been going to school full-time. House also testified at the hearing that when he is not in school he does work around his farm by helping the farm lessee three days per week by driving trucks, loading hay, cutting weeds and fixing equipment. House further stated that he enjoys reading college level texts. The ALJ concluded that this level of regular and continuous daily activity is inconsistent with disabling symptoms. The ALJ also noted that the only pain medication taken by House is over-the-counter Tylenol for headaches on an as-needed basis. The judge concluded that this type of pain management is not consistent with disabling pain, especially when measured against the level of daily activities performed by House.

■ When reviewing a denial of benefits, we will uphold the Secretary's final decision if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Whitehouse v. Sullivan*, 949 F.2d 1005, 1006 (8th Cir.1991). Substantial evidence is that which a reasonable mind might accept as adequate to support the Secretary's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). "As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir.1991).

■ We conclude there exists substantial evidence in the record as a whole indicating the ALJ correctly factored in House's subjective complaints of pain in determining that House's pain was not disabling. The ALJ specifically noted that House's pain was controlled by Tylenol, his medical treatment was minimal and he was able to perform a variety of daily activities inconsistent with disabling pain. *See Polaski v. Heckler, supra,* 739 F.2d at 1322.

■ House next challenges the ALJ's failure to include any reference to his complaints of headaches in the hypothetical question posed to the vocational expert. While it is clear that "questions posed to vocational experts ... should precisely set out the claimant's particular physical and mental impairments," *Greene v. Sullivan,* 923 F.2d 99, 101 (8th Cir.1991), a proper hypothetical question "is sufficient if it sets forth the impairments which are accepted as true by the ALJ." *Roberts v. Heckler,* 783 F.2d 110, 112 (8th Cir.1985).

Based on our conclusion that the ALJ's discrediting of House's subjective complaints of disabling headaches is supported by the record as a whole, we also conclude that the hypothetical question sufficiently included the impairments and functional restrictions that are supported by the record.

■ Finally, House contends the Secretary failed to produce sufficient evidence of jobs existing in significant numbers in the local economy which House could perform as required by the regulations. *See* 20 C.F.R. §§ 404.1560, 404.1561. In response to the hypothetical question, the vocational expert used *Dictionary of Occupational Titles* (DOT) code numbers to identify those jobs he believed House could perform, including a tool crib attendant and meter reader. However, in determining the number of such jobs available in the local economy, the vocational expert used the job titles from the Iowa job summaries. House now complains that there is no correlation between the Iowa job summaries and the DOT job titles because the Iowa job summaries do not consider the exertional requirements posited by the hypothetical question. He claims, therefore, that

because the expert's testimony regarding the number of available jobs is insensitive to exertional limitations, the testimony cannot be considered substantial evidence of available jobs in the economy.

We have considered and rejected a similar argument in *Whitehouse v. Sullivan, supra,* 949 F.2d at 1007, where we stated that, while the DOT job titles more narrowly classify jobs than do the Iowa job summaries, "the Secretary may take administrative notice of any 'reliable job information,' including both the DOT and Job Service summaries. 20 C.F.R. § 404.1566(d)." We held that "[t]here is no requirement that a vocational expert correlate the DOT titles with the Job Services summaries." *Id.*

We also reject House's argument that the vocational expert erroneously identified tool crib attendant as a light, unskilled job, when in fact the job is labeled medium and skilled in the DOT. Even assuming House's argument was correct, the vocational expert accurately identified alternative jobs which House was capable of performing and which existed in significant numbers in the economy. We now conclude that the ALJ properly relied on the vocational expert's testimony in finding that there were significant numbers of jobs in the economy which House could perform.

After carefully reviewing the record, we conclude that the Secretary's decision to deny benefits is supported by substantial evidence in the record as a whole. Accordingly, the judgment of the district court is affirmed.