# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3636

_____

| | | |
|---|---|---|
| Michael D. Warburton, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Kenneth S. Apfel, Commissioner of | * | |
| Social Security Administration, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  April 23, 1999

Filed:  September 1, 1999

_____

Before WOLLMAN[1] and LOKEN, Circuit Judges, and JACKSON,[2] District Judge.

_____

WOLLMAN, Chief Judge.

---

[1]Roger L. Wollman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 24, 1999.

[2]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri, sitting by designation.

Michael D. Warburton appeals from the district court's[3] judgment affirming the denial of his claim for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  We affirm.

## I.

Warburton was born on July 30, 1953, and has a high-school education as well as some community college training.  His past relevant work includes that of a bricklayer, a "roughneck" in the oil industry, and a bartender.  Warburton filed the current application on January 4, 1994, seeking benefits for the period beginning on June 1, 1990.  He claims to be disabled due to restrictions of his motion by the residuals of a 1988 injury, mental impairment, and stress.

On July 27, 1988, Warburton was working as a bricklayer when the scaffolding on which he was standing collapsed.  He fell approximately thirty feet and sustained severe back injuries.  Following an initial period of hospitalization and rehabilitation, Warburton completed training in neon sign bending.  He has not worked as a neon sign bender, however, due to complaints of numbness in his hands and back pain caused by prolonged standing.  From May to October of 1991 Warburton was employed as a bartender, working from twenty-five to forty hours per week.  Until July of 1995, Warburton worked approximately four hours per week mowing lawns for his landlady.

The Social Security Administration denied Warburton's application originally and on reconsideration.  Warburton then requested and received a hearing before an administrative law judge (ALJ).  The ALJ considered the evidence of disability, applying the five-step analysis prescribed by the Social Security Regulations.  See 20

---

[3]The Honorable William G. Cambridge, Chief Judge, United States District Court for the District of Nebraska.

C.F.R. §§ 404.1520(a)-(f); see also Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987) (describing the five-step analysis). The ALJ concluded that Warburton had not engaged in substantial gainful activity and exhibited a severe impairment. The ALJ went on to find, however, that Warburton did not meet any listed impairment as described in 20 C.F.R. Part 404, Subpart P, App. 1. Applying the criteria set forth in Polaski v. Heckler, 739 F.2d 1320, 1321-22 (8th Cir. 1984) (subsequent history omitted), the ALJ found that Warburton's subjective complaints of pain were not credible. Although the ALJ found that Warburton could not perform his past relevant work as a bricklayer, roughneck, or bartender, he found that Warburton could perform certain light and sedentary occupations based on a vocational expert's (VE) response to a hypothetical question. The ALJ therefore found that Warburton was not disabled within the meaning of the Social Security Act.

The Appeals Council denied Warburton's request for further review, and the ALJ's decision thereby became the final decision of the Commissioner. Warburton appealed to the district court, which affirmed the Commissioner's decision. Warburton appeals, contending that the hypothetical question posed to the VE did not accurately reflect all of his disabilities and that the ALJ failed to fully develop the record regarding his mental impairments.

## II.

"Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998) (internal citations omitted). Substantial evidence is relevant evidence that a reasonable mind would accept to support the Commissioner's conclusion. See Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). To determine whether existing evidence is substantial, "we must consider evidence that detracts from the [Commissioner's] decision as well as evidence that supports it." Id. (internal citations omitted). We may not reverse the Commissioner's decision merely because

substantial evidence supports a contrary outcome. See Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993).

In order to constitute substantial evidence, testimony from a VE must be based on a properly phrased hypothetical question. See Roe v. Chater, 92 F.3d 672, 675 (8th Cir. 1996). Such a hypothetical "should precisely set out the claimant's particular physical and mental impairments." House v. Shalala, 34 F.3d 691, 694 (8th Cir. 1994) (internal citations omitted). The hypothetical need not use specific diagnostic terms, however, where other descriptive terms adequately describe the claimant's impairments. See Roe, 92 F.3d at 676.

The ALJ formulated the following hypothetical question:

> It seems that he would occasionally be able to lift 20 pounds and frequently lift 10 pounds, but, that he cannot do repetitive bending or stooping. He also can't do repetitive reaching. He has continued low back pain, he has intermittent numbness of the upper extremities, he's obese, in addition, he can't do stooping or bending, he can't do twisting. He appears to be difficult to understand and to communicate with, so that he has difficulties in his social life. He has difficulties in forming friendships. He prefers to be alone, that in a stressful situation, that he tends to deteriorate. Assuming that the Administrative Law Judge finds that he could not perform [the] job of meeting people nor perform a job in which there is high stress, that he has some difficulty in getting along with coworkers or supervisors . . . Could he do other work in the national economy?

J.A. at 85-86.

Warburton testified that he could not work with his hands in front of his body for periods longer than one-half hour. He contends that the ALJ erred in failing to include this limitation in the hypothetical question. The hypothetical's only acknowledgment

of this impairment was the reference to "intermittent numbness of the upper extremities." We conclude that this was an accurate characterization of Warburton's ability to use his hands and arms in light of his testimony that he was able to serve drinks, cook hamburgers, operate a cash register, type for thirty minutes, mow lawns, and clean his home.

Warburton also claims that the hypothetical question failed to precisely state his mental impairments. In her psychological report, Dr. Rebecca Ann Schroeder, to whom Warburton had been referred by the Nebraska Disability Determination Services, noted that Warburton suffered from delusional thinking, which may increase with significant stress. She noted, however, that Warburton was able to sustain the concentration and attention needed for task completion. Dr. Schroeder also opined that Warburton was able to understand and carry out short, simple instructions. Although the ALJ did not identify Warburton's mental impairment through the use of medical terms, he related to the VE the particular symptoms of Warburton's mental condition based upon the medical record and his own observation of Warburton during the hearing. We conclude, therefore, that the hypothetical question adequately set forth Warburton's mental impairments.

Alternatively, Warburton claims that the ALJ erred by failing to fully develop the record regarding his mental impairments. He points to that portion of Dr. Schroeder's report which states: "Diagnosis considered for this client included delusional (paranoid) disorder or paranoid personality disorder. More information would be needed to obtain a complete diagnosis." J.A. at 399. Warburton contends that in light of this statement, the ALJ was required to develop further evidence of his mental condition.

"[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994) (citing 20 C.F.R.

§ 416.927(c)(4)).  The ALJ had the benefit of extensive testimony from Warburton during the lengthy hearing, as well as the benefit of Dr. Schroeder's report.  There was no evidence indicating that Warburton was unable to function because of his mental condition.  To the contrary, although Dr. Schroeder did not state a precise diagnosis, she indicated that Warburton possessed the mental capacity for the completion of simple tasks.  In light of this evidence, the ALJ was not required to order an additional mental examination.  See Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994).  Cf. Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994) (requiring ALJ to order mental evaluation when entire hearing lasted "a mere [ten] minutes," the ALJ asked no questions, no mental status evaluation was contained in the record, and the claimant stated that he had not worked for fifteen years, was virtually illiterate, slept in other people's cars, ate out of garbage cans, and had no relationships with other people).

Finally, Warburton claims that the ALJ erred because he failed to ask the VE whether Warburton was able to work on a full-time basis.  To deny benefits, the Commissioner was required to show that Warburton can work on "a daily basis in the 'sometimes competitive and stressful' environment of the working world."  Easter v. Bowen, 867 F.2d 1128, 1130 (8th Cir. 1989) (internal citations omitted).  Here, in addition to the other activities that he admitted he could perform, Warburton stated that he walks approximately one mile into town and back every day.  In addition, he testified that he worked up to forty hours per week as a bartender from May 1991 to October 1991.  This testimony provides substantial evidence that Warburton was capable of working on a daily basis.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.