Brian MEHAFFEY, Petitioner,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. C98–4101–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Feb. 3, 2000.

Gregory W. Peterson of Elverson, Vasey & Peterson, L.L.P., Des Moines, IA, for Petitioner.

Martha A. Fagg, Assistant United States Attorney, Sioux City, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

BENNETT, Chief Judge.

### I. INTRODUCTION

In this action, plaintiff Brian Mehaffey seeks judicial review of a decision of an administrative law judge ("ALJ") denying his application for Social Security benefits under Title II (disability insurance ("DI")) of the Social Security Act. Mehaffey seeks such benefits for a period beginning on December 1, 1994. He alleges that he has been unable to engage in any substantial and gainful work since that date as a result of his limited intellectual abilities. However, Mehaffey was denied DI bene-

fits at each stage of the Social Security administrative process.[1]

Dissatisfied with the results of the administrative process, Mehaffey filed this action for judicial review on November 27, 1998. This case was referred to Magistrate Judge Zoss on September 8, 1999, for the filing of a Report and Recommendation. Judge Zoss filed such a Report and Recommendation on September 22, 1999. In that Report and Recommendation, Judge Zoss concluded that the ALJ did not error in her submission of hypothetical questions to the Vocational Expert ("VE"); that the ALJ did not fail to give proper weight to the opinions of treating and consulting physicians; and, that the ALJ's credibility determinations were supported by substantial evidence. *See* Report and Recommendation at 10–22. Consequently, Judge Zoss therefore recommended that the ALJ's decision be sustained and that this court affirm the ALJ's decision.

Mehaffey filed objections to Judge Zoss's Report and Recommendation on October 4, 1999. This matter is now before the court for review of Judge Zoss's Report and Recommendation in light of Mehaffey's objections.

## II. LEGAL ANALYSIS

The court's legal analysis begins with consideration of the standards of review applicable to a report and recommendation of a magistrate judge and an ALJ's denial of Social Security benefits. With those standards in mind, the court will then address Mehaffey's objections to the report and recommendation.

### A. Standards Of Review

#### 1. Review of a report and recommendation

The standard of review to be applied by the district court to a report and recom-

mendation of a magistrate judge is established by statute:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose,* 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied,* 519 U.S. 860, 117 S.Ct. 164, 136 L.Ed.2d 107 (1996); *Grinder v. Gammon,* 73 F.3d 793, 795 (8th Cir.1996) (citing *Belk v. Purkett,* 15 F.3d 803, 815 (8th Cir.1994)); *Hudson v. Gammon,* 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk* ). Because objections have been filed in this case, the court must conduct a *de novo* review. The court has done so by reviewing the record before Judge Zoss in light of the Mehaffey's objections to Judge Zoss's Report and Recommendation.

#### 2. Review of an administrative denial of benefits

The Eighth Circuit Court of Appeals recently explained the standard for judicial review of an ALJ's denial of Social Security benefits as follows:

We must uphold the ALJ's decision if it is supported by substantial evidence. *See Metz v. Shalala,* 49 F.3d 374, 376 (8th Cir.1995). Our task is not to reweigh the evidence, and we may not reverse the Commissioner's decision merely because substantial evidence would have supported an opposite con-

---

1. A more detailed discussion of the procedural history of Mehaffey's application for Social Security benefits is not required here, because Magistrate Judge Zoss recounted that history in some detail in his Report and Recommen-

dation, filed September 22, 1999, *see* Report and Recommendation at pp. 2–3. Because no party has made any objection to that portion of the Report and Recommendation, the court finds it unnecessary to reprise that history.

clusion or merely because we would have decided the case differently. *See Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir.1993); *Smith v. Shalala,* 987 F.2d 1371, 1374 (8th Cir.1993). In determining whether substantial evidence supports the ALJ's decision, we must consider evidence in the record that supports the ALJ's decision as well as evidence that detracts from it. *See Brockman v. Sullivan,* 987 F.2d 1344, 1346 (8th Cir.1993).

*Harwood v. Apfel,* 186 F.3d 1039, 1042 (8th Cir.1999); *Weiler v. Apfel,* 179 F.3d 1107, 1109 (8th Cir.1999) ("We cannot reverse the ALJ's decision merely because the record contains substantial evidence supporting a contrary outcome."). " 'Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the [ALJ's] conclusion.'" *Weiler,* 179 F.3d at 1109 (citing *Pierce v. Apfel,* 173 F.3d 704, 706 (8th Cir.1999)). However, the reviewing court "must determine whether the ALJ's findings are supported by substantial evidence on the record as a whole." *Id.* (again citing *Pierce,* 173 F.3d at 706).

The Eighth Circuit Court of Appeals has also explained how a court is to determine whether the ALJ's findings "are supported by substantial evidence on the record as a whole":

> In *Gavin v. Heckler,* 811 F.2d 1195, 1199 (8th Cir.1987), the Court discussed the difference between "substantial evidence" and "substantial evidence on the record as a whole." "Substantial evidence on the record as a whole" wrote then Chief Judge Lay, "requires a more scrutinizing analysis" than the "substantial evidence" test. The Court went on to say:
>
> > In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. National Labor Relations Bd.,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95

L.Ed. 456 (1951). Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory. *See Steadman v. Securities and Exchange Commission,* 450 U.S. 91, 99, 101 S.Ct. 999, 1006, 67 L.Ed.2d 69 (1981). It follows that the only way a reviewing court can determine if the entire record was taken into consideration is for the district court to evaluate in detail the evidence it used in making its decision and how any contradictory evidence balances out.

*Gavin v. Heckler,* 811 F.2d at 1199. In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir.1975).

*Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998). Thus, this court must undertake a "scrutinizing analysis" of the evidence in the record as a whole.

### B. Mehaffey's Objections

Mehaffey initially objects to Judge Zoss's conclusion that the ALJ submitted an accurate hypothetical question to the VE. Specifically, Mehaffey contends that the following five nonexertial limitations were omitted from the ALJ's hypothetical question: (1) that Mehaffey needs a great deal of supervision or a job coach; (2) that Mehaffey is incapable of performing competitive work at a normal pace; (3) that Mehaffey is unable to accept instructions; (4) that Mehaffey is unable to respond appropriately to criticism; and (5) that Mehaffey is unable to avoid inappropriate behavior.

The Eighth Circuit has consistently held that questions posed to a vocational expert should set out precisely the claimant's physical and mental impairments. *Warburton v. Apfel,* 188 F.3d 1047, 1049 (8th Cir.1999) ("Such a hypothetical " 'should precisely set out the claimant's

particular physical and mental impairments.' ") (quoting *House v. Shalala*, 34 F.3d 691, 694 (8th Cir.1994)); *Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir.1994) ("It is well established that '[q]uestions posed to a vocational expert should precisely set out the claimant's particular physical and mental impairments.' ") (quoting *Ledoux v. Schweiker*, 732 F.2d 1385, 1388 (8th Cir.1984)) (quoting in turn *Tennant v. Schweiker*, 682 F.2d 707, 711 (8th Cir.1982)); *Totz v. Sullivan*, 961 F.2d 727, 730 (8th Cir.1992) ("It is well settled that the hypothetical question posed to a vocational expert must fully set forth a claimant's impairments."); *Greene v. Sullivan*, 923 F.2d 99, 101 (8th Cir.1991) ("The law is clear that 'hypothetical questions posed to vocational experts in such circumstances should precisely set out the claimant's particular physical and mental impairments.' ") (quoting *Tennant*, 682 F.2d at 711); *Shelltrack v. Sullivan*, 938 F.2d 894, 898 (8th Cir.1991) ("A hypothetical question posed to a vocational expert must fully set forth a claimant's impairments."). The logical underpinning for such a requirement is that "[u]nless the hypothetical question comprehensively describes the limitations on a claimant's ability to function, a vocational expert will be unable to accurately assess whether jobs do exist for the claimant." *Smith*, 31 F.3d at 717. Thus, "[i]f a hypothetical question does not include all of the claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Cox v. Apfel*, 160 F.3d 1203, 1207 (8th Cir.1998) (citing *Greene v. Sullivan*, 923 F.2d 99, 101 (8th Cir.1991)); *accord Warburton*, 188 F.3d at 1049; *Smith*, 31 F.3d at 717; *Shelltrack*, 938 F.2d at 898; *Penn v. Sullivan*, 896 F.2d 313, 316–17 (8th Cir.1990); *Douglas v. Bowen*, 836 F.2d 392, 396 (8th Cir.1987).

■ Here, the ALJ posed the following hypothetical question to the VE:

For purposes of the hypothetical question, we have a 36–year–old individual with a tenth grade education, work activity as you set out in Exhibit 27. As to his physical abilities, he had a workers' Comp injury in August of 1993 and underwent an anterior cushiate (sic) ligament reconstructive surgery in September of '93. It's at Exhibit 13. According to Dr. Kirkland who was the surgeon, he indicated in August of '95 that claimant does not have any restrictions or limitations with lifting, carrying, standing, walking or sitting. He can stoop or climb without any difficulty. Kneeling on his left knee may occasionally give him problems. He can crawl without any difficulty. He has no problems with handling, seeing, hearing, speaking, or traveling, and no environmental limitations. That's Exhibit 13. As to his mental abilities, he underwent psychological testing in August of '95 on Wechsler Adult Intelligent Scale and the scores are listed in Exhibit 14. He received a full scale IQ score of 77, a performance IQ score of 79, and a verbal IQ score of 76, and it was determined that he functions in the borderline intellectual range. Accordingly, although he would be markedly limited in his ability to understand and remember detailed instructions, he is not significantly limited in his ability to remember locations, work like procedures, and only moderately limited in his ability to understand and remember very short and simple instructions. As to his concentration and persistence, he would be moderately limited in his ability to maintain attention and concentration for extended periods of time. Markedly limited in his ability to carry out detailed instructions. He has minimal ability to read and write and do simple arithmetic, but he is capable of simple, routine, repetitive one to three step tasks and work that does not require reading and writing, extensive reading and writing or more than a third grade level of reading, writing

and simple arithmetic. With those restrictions, would he be able to perform any of his past work activity?

R. at 73. The VE answered, "[u]nder those restrictions, Your Honor, I would see no barrier to him returning to past employment as he performed it." R. at 73.

Although Judge Zoss concluded in his Report and Recommendation that the level of supervision Mehaffey required was reflected in the hypothetical, Report and Recommendation at p. 16 n. 7, the court concludes that Mehaffey's ability to understand follow instructions is not synonymous with supervision. As a result, the hypothetical posed by the ALJ may have violated the precept established in the line of authority noted above because it did not state the level of supervision that Mehaffey required in a workplace setting. The evidence is uncontroverted that two of Mehaffey's prior jobs were in sheltered workshops. R. at 107. Furthermore, the record contains evidence that when Mehaffey started work at Commercial Equipment he had a job coach. R. at 66. Moreover, Mehaffey's own testimony was that while employed at Commercial Equipment he was "pretty much always supervised." R. at 56. The significance of the level of supervision required in order for Mehaffey is demonstrated by the following colloquy that occurred during cross-examination of the VE:

> Q. How about if a person required more than an inordinate amount of supervision that you don't find in a normal workplace such as a job coach or you know, one on one or very frequent types of supervision?
>
> A. Well, we're basically, I don't mean to redefine, but it sounds as though were talking about sheltered employment. Sheltered employment, of course, is not competitive employment.

R. at 74.

The court is mindful that the ALJ has a duty to develop the record fully and fairly, even if the claimant is represented by counsel. *See Cox v. Apfel,* 160 F.3d 1203, 1208 (8th Cir.1998); *Battles v. Shala-*

la, 36 F.3d 43, 44 (8th Cir.1994); *Miller v. Shalala,* 8 F.3d 611, 613 (8th Cir.1993); *Boyd v. Sullivan,* 960 F.2d 733, 736 (8th Cir.1992). Here, the ALJ failed to properly develop the record regarding the level of supervision that Mehaffey required while he was employed at Commercial Equipment. Because the ALJ failed to properly develop the record, there is no way to determine whether the question posed in this case accurately reflected Mehaffey's abilities and limitations. Similarly, the record is not developed as to the pace at which Mehaffey can perform competitive work in an employment setting.

Consequently, Magistrate Judge Zoss's Report and Recommendation, filed on September 22, 1999, is **rejected,** the ALJ's denial of Title II disability benefits is **reversed** and this case is **remanded** to the Commissioner for a rehearing to develop further the record concerning the level of supervision that required for Mehaffey in order for him to sustain employment and the pace at which Mehaffey can perform competitive work, and the submission of a hypothetical question to a vocational expert which includes all of Mehaffey's impairments, limitations, and restrictions. The remand in this case is pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**