Paul HARTMAN, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

No. 3:08–cv–15 RWP–CFB.

United States District Court, S.D. Iowa, Davenport Division.

Jan. 9, 2009.

---

Richard L. Richards, U.S. Attorneys Office, Des Moines, IA, for Defendant.

Michael DePree, Bowman & DePree, Davenport, IA, for Plaintiff.

## ORDER

ROBERT W. PRATT, Chief Judge.

Plaintiff, Paul Hartman, filed a Complaint in this Court on February 8, 2008, seeking review of the Commissioner's decision to deny his claim for Social Security benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g).

Plaintiff filed an application for benefits on December 30, 2004. The actual application for Title XVI benefits does not seem to appear in the administrative record of this case, but a Leads/Protective Filing Worksheet states that such application was taken on 12/30/04. Tr. at 272. Plaintiff, whose date of birth is February 25, 1985, was 21 years old at the time of the hearing on September 22, 2006. Tr. at 285. After the application was denied, initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge. The hearing was held before Administrative Law Judge George Gaffaney (ALJ). The ALJ issued a Notice Of Decision—Unfavorable on May 11, 2007. Tr. at 11–21. The Appeals Council declined to review the ALJ's decision on January 10, 2008. Tr. at 6–9. Thereafter, Plaintiff commenced this action.

The ALJ proceeded through all five steps of the sequential evaluation, finding that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. He found that Plaintiff has severe impairments consisting of depression, rule out bipolar disorder, and bulimia. Tr. at 16. He found that none of the impairments or a combination thereof meet or equal a listed impairment. Tr. at 17. At the fourth step of the sequential evaluation, the ALJ found Plaintiff retains "the residual functional capacity to perform simple, routine tasks, requiring no change in settings; he would need reminders of his tasks approximately four times per day; he cannot tolerate interactions with the public, but can occasionally interact with coworkers and supervisors." Tr. at 17. The ALJ found that Plaintiff is unable to perform any of his past relevant work but that he is able to do unskilled jobs such as car wash attendant, newspaper carrier, or sorter/labeler/agriculture produce. The ALJ found that Plaintiff is not disabled and not entitled to the benefits for which he applied. Tr. at 21.

## DISCUSSION

Our role on review is to determine if the Commissioner's findings are supported by substantial evidence on the record as a whole. *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir.2006.); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir.2000). Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion. *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006). In considering the evidence, we must consider both evidence that supports and evidence that detracts from the Commissioner's decision. *Karlix v.*

*Barnhart,* 457 F.3d 742, 746 (8th Cir. 2006). We will disturb the ALJ's decision only if it falls outside the available "zone of choice." *Hacker v. Barnhart,* 459 F.3d 934, 936 (8th Cir.2006). An ALJ's decision is not outside the "zone of choice" simply because we might have reached a different conclusion had we been the initial finder of fact. *Id.* Consequently, we may not reverse the decision to deny benefits unless the record contains insufficient evidence to support the outcome. *Culbertson v. Shalala,* 30 F.3d 934, 939 (8th Cir.1994).

*Nicola v. Astrue,* 480 F.3d 885, 886–87 (8th Cir.2007.)

In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir.1975).

On February 3, 2005, Tina Steele, L.M.S.W., a psychotherapist at the Gannon Center for Mental Health, responded to a request for information from Disability Determination Services. Plaintiff's diagnoses were major depressive disorder with psychotic features, eating disorder NOS, and rule out bipolar disorder. Ms. Steele wrote that Plaintiff exhibits symptoms of depression which last for periods of up to six weeks of severe, intense symptoms, anger and impulsive and inappropriate social behavior. Psychotic features included visual hallucinations. She said that Plaintiff exhibits social phobia behavior. Plaintiff was treated at the Center with psychotherapy on a bi-weekly basis and with medication therapy from Dr. Venugopal Depala who was prescribing Geodon and Zoloft. Ms. Steele wrote that Plaintiff had an extended history of anger/aggressive behaviors and oppositional and defiant behaviors. She said that Plaintiff had received special education but had "a very difficult time with functioning with an [sic] authority figure and is quick to anger. He often has paranoid thoughts, which exacerbates his impulse to anger. When he is uncomfortable in social environment his first response is in anger." Although Plaintiff had learned some techniques of redirecting his emotional response to act out aggressively, she said that Plaintiff continued "to experience anger consistently, frequently and intensely." Tr. at 247. Ms. Steele wrote:

> Paul exhibits concentration difficulties. When he is frustrated regarding these difficulties, it exacerbates his mental health symptoms. Thus, due to his mental health issues, his ability to carry out instructions, maintain attention, concentration and pace will be significantly limited. When he forgets instructions, he will often respond in anger due to frustration. Due to Paul's impulsive aggressive behaviors and his social phobia, his ability to interact appropriately with supervisors, co-workers, public and his ability to use good judgment and respond positively to changes would be significantly inhibited. Paul is not able to respond appropriately to changes in the work place. He does not respond well to changes in routine, nor with confrontation. I believe Paul would be capable of handling his own cash benefits appropriately.

Tr. at 248.

On January 3, 2006, Venugopal Depala, M.D., Plaintiff's treating psychiatrist, completed a mental residual functional capacity form. Tr. at 239–41. The doctor was asked to rate 25 domains on a scale of "Unlimited or Very Good," meaning that the ability to function was more than satisfactory; "Good," meaning the ability to function is limited but satisfactory; "Fair," meaning the ability to function is seriously limited; and "Poor or None," meaning

there is no useful ability to function. None of the domains was rated as "Unlimited or Very Good." Three domains were rated as "Poor or None." Those domains are: Work in coordination with or proximity to others without being unduly distracted; complete a normal workday or workweek without an unreasonable number and length of rest periods; and, respond appropriately to changes in a routine work setting. The doctor wrote that Plaintiff could be productive if he could work in a controlled workplace where he could work alone. Tr. at 239. The doctor also indicated that Plaintiff would likely be absent from work more than four days per month. Tr. at 240. On September 12, 2006, Dr. Depala wrote that his opinion of Plaintiff's ability to work had not changed. Tr. at 260. At the hearing, Plaintiff testified he had been seeing Dr. Depala for two years. Tr. at 291.

At the hearing, Plaintiff testified that he left school in the 10th grade when he was 16 years old because he was getting into 4 or 5 fights each day. ". . . if students would say one thing to me or whisper I figured they were going to do something to me and I just exploded." Tr. at 291. Plaintiff explained: "Well, pretty much every job that I, the really short ones that I worked I worked for only a day. Somebody would, one of the other cooks or employees would say something to me or the manager and I would just go nuts, to put it in simplest terms." "One of them that stands out the most is, somebody, one of the customers said that something wasn't done and they wanted their order redone and I started yelling and swearing at the customer and at my supervisor, and at the waitress." Tr. at 292. Plaintiff testified that he worries about hurting someone when he's around other people. "Because every little thing, I'm paranoid of every little thing that somebody does towards me or to me and I got, it, just, everything

makes me go nuts." Tr. at 295. Plaintiff said that he is 6 feet, 5 inches tall and that he weighs 250 pounds. Tr. at 296.

After the vocational expert testified to a hypothetical question reflecting the ALJ's finding of residual functional capacity, he was asked what effect two unscheduled breaks of an hour's duration would have on the ability to work. He responded that competitive employment could not be performed. Tr. at 301. The vocational expert testified that competitive employment was not possible for someone who would miss more than four days per month. Tr. at 302–03. The vocational expert was asked if competitive employment would be available for someone required to work alone, meaning no contact with supervisors, co-workers, or the public. The vocational expert responded that there may be some highly skilled positions available, but none at the unskilled or semi-skilled level. Tr. at 303.

For reversal, Plaintiff argues the ALJ's finding of residual functional capacity is not supported by substantial evidence, that the ALJ relied on a flawed hypothetical question, and that the ALJ erred in assessing Plaintiff's credibility.

In *Warburton v. Apfel,* 188 F.3d 1047, 1050 (8th Cir.1999), the Court wrote:

In order to constitute substantial evidence, testimony from a VE must be based on a properly phrased hypothetical question. *See Roe v. Chater,* 92 F.3d 672, 675 (8th Cir.1996). Such a hypothetical "should precisely set out the claimant's particular physical and mental impairments." *House v. Shalala,* 34 F.3d 691, 694 (8th Cir.1994) (internal citations omitted). The hypothetical need not use specific diagnostic terms, however, where other descriptive terms adequately describe the claimant's impairments. *See Roe,* 92 F.3d at 676.

In *Masterson v. Barnhart*, 363 F.3d 731, 737–38 (8th Cir.2004), the Court wrote that the ALJ must determine the claimant's residual functional capacity based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. The Court wrote:

> Although the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir.2000), we have also stated that a "claimant's residual functional capacity is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir.2001). "[S]ome medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir.2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses that claimant's "ability to function in the workplace[.]" *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir.2000). In evaluating a claimant's RFC, the ALJ is not limited to considering medical evidence, but is required to consider at least some supporting evidence from a professional. *See* 20 C.F.R. § 404.1545(c); *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (internal citations omitted.)

In the case at bar, the ALJ evaluated Plaintiff's claim as though he is occasionally in a bad mood, and just needs to take a few deep breaths to regain his composure. Nevertheless, according to the ALJ, Plaintiff is able to tolerate criticism from his supervisors, and can tolerate being around his co-workers. That is not the record of this case. Plaintiff suffers from major depression with psychotic features. This impairment has robbed Plaintiff of his ability to complete his education, and to have any meaningful work life. The record reflects that the only thing Plaintiff is able to do for enjoyment is to go bowling with his father and brothers, and we don't know how often he is able to do that. It is clear that the ALJ in this case disregarded the opinion of the physician and made his own medical assessment of Plaintiff's condition. This is error.

In *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996), the Court wrote: "And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." In *Wilder v. Chater*, 64 F.3d 335, 337–38 (7th Cir.1995), the Court wrote:

> Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it. . . . But she is entitled to a decision based on the record rather than on a hunch. The salient fact of record is the testimony of the psychiatrist, a disinterested as well as expert witness. Everything else is rank conjecture.

There is no substantial evidence, medical or otherwise, to support the ALJ's finding that Plaintiff has the ability to work at simple routine tasks with occasional contact with supervisors and co-workers. Plaintiff's testimony that he is unable to tolerate being around other people is supported by the testimony of his treating physician and mental health therapist. There is no medical opinion in this record which contradicts that of the treating physician.

In the opinion of this Court, Plaintiff proved his disability with medical evidence. There was no contrary evidence which would support a finding of not disabled. In *Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir.1987), the Court wrote that "where the total record is overwhelmingly in support of a finding of disability and the

claimant' has demonstrated his disability by medical evidence on the record as a whole, we find no need to remand."

Before concluding this case, the Court would add a word of encouragement to Plaintiff himself. Based solely on the record of Plaintiff's testimony, the Court would not be surprised if it is found that he is a person of average, if not higher, intelligence. Although afflicted with a disabling illness at this time, Plaintiff is a young man. If he continues to follow the medical treatment prescribed by his physicians and other mental health care providers, perhaps Plaintiff will be able to overcome his disability, complete his education, receive training, and enjoy a purposeful life. In this regard, the Court is reminded of *Jeffcoat v. Bowen,* 840 F.2d 592, 595 n. 2 (8th Cir.1988), wherein the Court of Appeals wrote: "... Jeffcoat is a young man, and it would be highly regrettable if a disability that could be overcome through proper training were to prevent him from becoming a productive member of society and keep him on the public welfare rolls for the rest of his life." Until such time, however, Plaintiff is entitled to the benefits for which he applied.

## CONCLUSION AND DECISION

It is the holding of this Court that Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court finds that the evidence in this record is transparently one sided against the Commissioner's decision. *See Bradley v. Bowen,* 660 F.Supp. 276, 279 (W.D. Arkansas 1987). A remand to take additional evidence would only delay the receipt of benefits to which Plaintiff is entitled.

The final decision of the Commissioner is reversed and the Commissioner is ordered to award Plaintiff the benefits to which he is entitled.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel,* 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406(B), and LR 54.2(b)[1]. *See also, Gisbrecht v. Barnhart,* 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002); *Mitchell v. Barnhart,* 376 F.Supp.2d 916 (S.D.Iowa 2005).

IT IS SO ORDERED.

---

**1.** N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the government in the case that the applicant alleges were not substantially justified."